UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KEVIN GLENN SUMMERFIELD #106228/407232 | CIVIL ACTION NO. 18-cv-0838 |
| VERSUS | JUDGE FOOTE |
| S. HERRING | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

Kevin Glenn Summerfield ("Plaintiff") is a self-represented inmate who filed this civil action against Shreveport police officer S. Herring. Plaintiff alleges that Herring subjected him to excessive force, resulting in a fractured jaw, broken nose, torn ACL, and other injuries. He seeks compensatory damages and requests proper medical attention.

Before the court is a Motion for Summary Judgment (Doc. 17) filed by Officer Herring. After the original briefing of the motion, the court noted a lack of competent summary judgment evidence regarding the key events and afforded the parties the opportunity to file supplemental material. Doc. 21. Herring then filed an affidavit (Doc. 22), and Plaintiff filed a second memorandum in opposition. For the reasons that follow, it is recommended that Herring's motion be granted and this case be dismissed with prejudice.

## Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Herring's Summary Judgment Evidence**

Officer Herring testified in his affidavit about the events surrounding Plaintiff's arrest. Herring attached to his affidavit an offense report that he wrote, and he certified that it contains true and correct facts that are based on his personal knowledge. The affidavit and report reflect that Officer Herring was performing a periodic check on Monkhouse Drive, an area of high drug activity, when he saw a GMC Sierra turn onto Monkhouse driving erratically, with the driver losing control of the vehicle. Herring turned on his lights and siren to make a traffic stop, but the Sierra pulled into the parking lot of the Merryton Inn at a high rate of speed, circled behind the building, and then stopped near the front office.

Plaintiff, who was the driver, got out of the truck and began walking toward the hotel. Herring got out of his car and ordered Plaintiff to stop and show his hands. Plaintiff instead picked up his pace and entered the hotel. Herring was able to enter the hotel behind Plaintiff before the door shut and locked. The officer noted that another male was sitting in the passenger seat of the Sierra, but he stayed in the vehicle.

Plaintiff began to run from Herring inside the hotel, but Herring grabbed him, and both men began to fall. As they fell, Herring saw Plaintiff remove a firearm from his waistband, but the firearm fell from Plaintiff's hands during the fall. Plaintiff crawled toward the firearm while Herring attempted to gain control of him. The men struggled, during which time Plaintiff placed his hands around Herring's neck to choke him.

Herring testified that he used "empty closed fist strikes" on Plaintiff to cause him to release his hands from Herring's neck. Plaintiff managed to break free and fled in the direction of the firearm, which had slid about 15 feet away during the struggle. Herring deployed his Taser in an attempt to regain control; he is later heard saying on the recordings that it "didn't stick." Plaintiff was then taken down by Officer McKneely, who arrived on the scene and encountered Plaintiff as he fled down a hallway. Herring and McKneely attempted to place handcuffs on Plaintiff, but Plaintiff continued to reach for his waistband for what Herring thought could be another firearm or weapon. Herring then delivered additional strikes to disorient Plaintiff and allow McKneely a chance to place Plaintiff in handcuffs.

Once Plaintiff was secured in handcuffs, the officers returned him to Herring's patrol car. Plaintiff refused to answer any questions, but he continuously stated that he was

not driving the vehicle and that he did not have a gun. Plaintiff attempted to exit the patrol car multiple times, ignored orders to put his legs back in the car, and had to be physically placed back in the car. The Sierra and Plaintiff's firearm were determined to be stolen, and Plaintiff was wanted on a warrant from another parish.

The Shreveport Fire Department was called to treat Plaintiff for his observable lacerations and bruises. Firemen treated him on the scene. A police officer then took Plaintiff to University Health for further medical evaluation.

**Plaintiff's Response**

Plaintiff first responded to the motion with a one-page memorandum (Doc. 20) and argued that it was premature for the court to rule on the matter without considering all facts. Plaintiff contended that he had "indisputable proof" that he did not attempt to point a firearm at the officer or resist arrest, and that the officer continued to strike Plaintiff in the face after he was handcuffed. Plaintiff did not offer any supporting evidence.

After Herring filed his supplemental affidavit, Plaintiff took advantage of the opportunity to file a second opposition. That memorandum (Doc. 23) was longer but was also unaccompanied by any competent summary judgment evidence. Plaintiff argued that he had an eyewitness to support his claim and that a review of the police reports and dash camera would refute Herring's testimony. Plaintiff also asserted that both officers involved in the arrest continued to beat him while in restraints in the hotel hallway and on the front of the police unit on the outside of the hotel. He alleged that Officer Herring slammed Plaintiff's face on the hood of the patrol car while Plaintiff was in full restraints. Plaintiff argued that the dash camera recording from the patrol car would prove those facts.

**The Dash Camera Recording**

The recording from Herring's patrol car does not depict all of the events, but what it does show is consistent with Herring's descriptions and does not support Plaintiff's claims. The video shows that Herring attempted to initiate a traffic stop with lights and siren, whereupon the driver circled around the back of the hotel, stopped at the front entrance, got out, and quickly walked inside despite Herring's orders to "Come here" and "Let me see your ******* hands."

The recording continued as the events inside the hotel took place, but the camera in the patrol car outside obviously did not capture video of the indoor events. It did record some of the audio of the inside events, with Herring's microphone going in and out of range. There are sounds of a struggle, and Herring is heard yelling orders such as, "Don't move!" and "Put your hands behind your back!" Herring is also heard saying (apparently to McKneely), "He tried to pull a gun on me," and telling Plaintiff that he was lucky he did not get shot.

As the two officers emerged from the hotel with Plaintiff in handcuffs, Plaintiff denied that he did anything, and Herring advised him of his Miranda rights and told him it was "all on camera." Plaintiff was placed on the hood of the car to be searched. He moved, and Herring responded by shoving Plaintiff's head back down on the hood and warning Plaintiff not to move again. Herring gave multiple detailed descriptions of the incident to other officers, and his descriptions on the audio/video recording are consistent with his affidavit. Officers can be heard ordering Plaintiff on more than occasion to stay inside the patrol car. The video does not contain any evidence that Plaintiff was subjected to any

force that was excessive under the circumstances, or that he was otherwise mistreated in the ways he alleges.

**Excessive Force**

When a person who has been arrested asserts that officers used excessive force in violation of the Fourth Amendment, the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances. Graham v. Connor, 109 S.Ct. 1865 (1989). To overcome an officer's claim of qualified immunity, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009).

Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

The uncontested summary judgment evidence offered by Officer Herring shows that he is entitled to summary judgment on this claim. The incident began as an attempted traffic stop for careless operation, but Plaintiff escalated the situation by fleeing the officer in the vehicle and then on foot. When the officer attempted to detain Plaintiff, Plaintiff again escalated the situation and created a risk that he or the officer or a hotel guest could have been shot and injured or killed. Plaintiff may have suffered injuries, but the evidence

indicates that it was because Herring was required to use force to subdue Plaintiff after Plaintiff drew a gun, attacked and choked the officer, and resisted all efforts to bring him under control. The force that was used was not clearly excessive under the circumstances, so Herring in entitled to summary judgment.

**Medical Care**

The only defendant is Officer Herring. Plaintiff prayed in his complaint for proper medical attention and compensatory damages due to pain and suffering. The uncontested summary judgment evidence shows that Herring called for medical attention after the arrest, and Plaintiff was promptly given care by firemen and taken to the hospital. Plaintiff has no claim against Herring for denial of medical care.

**Requests to Amend Complaint; CCC and Officer McKneely**

Plaintiff asks in his second memorandum that he be allowed to amend his complaint to sue the Caddo Correctional Center ("CCC") and Officer McKneely. "An amendment that a party raises late in the pre-trial life of a lawsuit has a significant tendency to disrupt trial proceedings." Little v. Liquid Air Corp., 952 F.2d 841, 846 (5th Cir. 1992), on reh'g en banc, 37 F.3d 1069 (5th Cir. 1994). Where, as here, there is an apparent lack of diligence by the party who seeks to amend, that party has the burden of showing that his delay was due to oversight, inadvertence, or excusable neglect. Parish v. Frazier, 195 F.3d 761, 763 (5th Cir. 1999); Gregory v. Mitchell, 634 F.2d 199, 203 (5th Cir. 1981). And the court should "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." Parish, 195 F.3d at 764.

Plaintiff's request to sue the CCC regarding his post-arrest medical care should not be granted. The first reason is that "[i]t is well established that a detention center is not a legal entity capable of being sued." Robertson v. Detention Center Claiborne Parish, 2009 WL 3241561 (W.D. La. 2009). This court has specifically held that CCC is not an entity capable of being sued. It is merely a building and grounds owned by the sheriff. Hicks v. Page, 2010 WL 2243584 (W.D. La. 2010).

The request to amend should not be granted even if Plaintiff sought to add an individual defendant at CCC who could be sued for denial of medical care. Plaintiff has had ten months to name the defendants he wished to sue, and he has complained about his medical care from the outset. Yet he never named a defendant associated with his medical care at the jail. Allowing the proposed amendment would prejudice Herring by preventing him from obtaining a final judgment that ends this litigation. It would also expand the scope of the litigation beyond targeting Herring, a city employee, to suing someone employed by the sheriff. Plaintiff has not met his burden, so an amendment to add CCC or any related defendant should not be considered.

Plaintiff also argues that he should be allowed to amend his complaint to add Officer McKneely as a defendant on his excessive force claim. That request should not be granted. Plaintiff has known of Officer McKneely's role in the litigation from the beginning, and he never made any indication that he wished to sue a second officer. It is too late to do so now. Furthermore, the summary judgment evidence indicates that Plaintiff would not prevail on such a claim even if he had included it in his original complaint.

Accordingly,

It is recommended that Officer Herring's Motion for Summary Judgment (Doc. 17) be granted and that Plaintiff's complaint be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of April, 2019.

Mark L. Hornsby
U.S. Magistrate Judge